IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

FILED

MAY 26 2016

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____
                    DEPUTY

| | | |
|---|---|---|
| YOLANDA SALDIVAR #733126 | § | |
| | § | |
| V. | § | W-16-CA-095-RP |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| MELOYDE NELSON, WHITNEY | § | |
| | § | |
| FRANKS, and UTMB CONTRACTOR | § | |

## THE PLAINTIFF'S MORE DEFINITE STATEMENT

## PURSUANT TO THIS COURT'S ORDER OF APRIL 28, 2016

Comes now, the Plaintiff, and Answer's this Court's Questions as **ORDERED**:

### QUESTION

1. In your complaint, you have named Director William Stephens as a defendant. State exactly what it is that this defendant either personally did or failed to do while acting under color of state law that you believe violated your constitutional rights. Specifically state each and every injury, harm, damage or other adverse consequence which you suffered as a result of the acts or omissions of this defendant. (Doc. 6 pg. 2 of 6)

### ANSWER

Defendant, Mr. William Stephens, is legally responsible for the overall operations of the Department of Criminal Justice ("TDCJ") and each institution under its jurisdiction, including the Mountain View Unit where the Plaintiff resides. He is also responsible for the continuity of proper conduct of all Rank and officers especially when they abuse their power. Acting under color of state law, he is responsible for the actions and inactions of those prison

officials under his authority and command.

When the Plaintiff was assigned to a cell with a TOP BUNK BED on May 20, 2015, she complained immediately to "TDCJ" prison rank and officers (Lt. Hocutt, Sgt. Briggs and officer Coble) about her inability to climb up and down a TOP BUNK BED because of her height (4'll") and fear of falling. Their deliberated indifference in not wanting to move her and listen to her complaints, forced the Plaintiff to live in an unsafe cell. They reasoned that because the Plaintiff did not have a BOTTOM BUNK BED restriction, she was appropriately assigned. But this goes against judgment and discretion that when prison officials are informed of a safety hazard, that the complaint be taken as real and legitimate until disproven otherwise. The Plaintiff filed an "EMERGENCY" grievance requesting a BOTTOM BUNK BED restriction because Lt. Hocutt and Sgt. Briggs informed the Plaintiff that unless she obtained this restriction, she was not being moved to another cell. They cared not for the safety of the Plaintiff. By the Plaintiff's complaints, she triggered "TDCJ" policy E.D.-10.61 by the authority of Tex.Gov't Code §493.006(b) which states:

> "that "TDCJ" shall emphasize a safe environment for all employees and offenders. "TDCJ" is committed to compliance with all applicable safety rules and regulations. Employees shall follow all safety policies and procedures and report "UNSAFE CONDITIONS", "HAZARDS", or acts as described in A.D.-10.63..."

This policy is enforced by Mr. Stephens as Director of this institution. The grievance filed by the Plaintiff was then processed as "NON-EMERGENCY". The Plaintiff's pleas were not taken seriously. By the time the grievance was answered on June 11, 2015 (23 days later from the Plaintiff's first complaints), the following happen:

1. The Plaintiff continued to complain to many prison officials including rank of her fear falling climbing up and down a TOP BUNK BED. They refused to listen.
2. On May 26, 2015, the Plaintiff fell hitting her head and sustaining a hematoma.

3. The Plaintiff was seen by a nurse at her cell and not by a physician post head injury.
4. The Plaintiff was denied to be moved to a safe cell by Rank post head injury.
5. Post head injury symptoms consisted of headaches, feeling off-balanced and nausea for 10 days.
6. The Plaintiff was denied medical care by a physician for 10 days.
7. On June 4, 2015, the Plaintiff had a throbbing headache, nausea and feeling off-balanced which continued through her visit that day with her sister and niece.
8. The Plaintiff vomited at her visit.
9. The Plaintiff taken to medical and was seen by Dr. Burleson who ordered that the Plaintiff be assigned a lower bunk bed restriciton immediately.
10. A CT Scan ordered at Coryell Memorial Hospital.
11. A neurological evaluation and CT Scan done. Intravenous medications of Benadryl and Reglan given for the Plaintiff's headache and nausea.
12. Emergency Room Physician Clinical Impression: Headache and Concussion.

Two days post head injury on May 28, 2015, the Plaintiff pleaded with Assitant Warden Franks and Major Williams who were doing rounds in E-Dorm building. The following conversation occurred:

Plaintiff:     "Warden Franks, I fell off the bed because I cannot climb up or down the TOP BUNK and I already have a head injury. Can I be moved to cell #5 which is available with a BOTTOM BUNK?"

Asst. Warden:  "Unless medical give you a BOTTOM BUNK BED restriction, I am not going to do anything to move you at all, regardless if you fell and injured your head".

Plaintiff:     "Warden Franks, I have headaches, feel off-balanced and have nausea. Does not my safety concern you?"

Asst. Warden:  "What don't you understand about what I've just told you? I am not moving you, no matter what!"

Plaintiff:     "But Warden Franks, this is an issue to my health and safety".

Asst. Warden:  "I'm not talking to you about this anymore!"

Assistant Warden Franks turned and walked away. Later that afternoon at a meeting with Warden Nelson, Assitant Warden Franks, Major Williams and Ms. Williams of Classification, the following conversation occurred:

Warden Nelson:  "Saldivar, I just finished talking to your sister and I assured her, as I am assuring you, that I will take care of you and make sure you see medical. Your family need not to be bothered about you with everything you are going through".

Plaintiff:      "Warden Nelson, I need a bottom bunk bed for I fear falling again and now I have a head injury and I have not seen medical for it".

Warden Nelson:  "Medical will be seeing you".

Warden Nelson was deceitful with her assurances to the Plaintiff and her

family.   The Plaintiff pleaded many times to Rank-in-file to be moved to a
safe cell.   They all refused until medical acted and it did so on June 4, 2015
(10 days post head injury) when the Plaintiff saw Dr. Burleson and was moved
to a lower bunk bed.   Prison Rank-in-file contributed to this injury that the
Plaintiff sustained by their disregard for her safety.   Their behavior can only
be characterized as wantonness, obduracy and sadistic.   They abused their
power and the Plaintiff was the recipient of that abuse.

In order for the Plaintiff to redress a grievance, the Plaintiff cannot
appeal directly to Mr. Stephens unless administrative remedies (i.e. Step I
and II grievance) have been exhausted.   This is because of a standard "TDCJ"
policy.   From the time the Plaintiff filed her Step I grievance on May 20, 2015
to the time she received an answer back on June 11, 2015 (23 days later), the
Plaintiff was moved, had seen a physician and bottom bunk restriction given.
The Plaintiff continued her grievance process and filed her Step II grievance
to the office of Director Stephens on June 11, 2015 and received a response
back on August 19, 2015 (69 days later).   By the time the grievance process was
completed (92 days later), the Director's assistant, Mr. Fuster, answering the
grievance stated that the Plaintiff's issues were addressed at the Step I level.
THEY WERE NOT.   They were addressed by medical, not by prison officials who
have custody of the Plaintif and are responsible for her safety.

The Plaintiff asserts that Mr. William Stephens is in custody of the
Plaintiff and is responsible for her well-being and safety.   Acting under
color of state law, accepts the responsibility to keep the Plaintiff safe
according to "TDCJ" policy.   He delegates that responsibility to prison officials
under his command.   Those prison officials (i.e. Warden Nelson, Assistant
Warden Franks) acting under color of state law, accepts the responsibility
delegated to them by Mr. Stephens to provide that safety obligation to all

offenders.

In retrospect, the Plaintiff's safety and well-being was deficient and compromised from the beginning that the Plaintiff was moved to an unsafe cell, suffered a head injury and not until 15 days later that her safety was secured when she was moved to a safe cell. Mr. Stephens failure to act to the Plaintiff's safety was inexcusable. His intervention was required especially when policy so dictates it and furthermore when his substitutes (i.e. Warden Nelson, Assistant Warden Franks) determined not to yield to the Plaintiff's pleas for safety. Instead her pleas went unanswered. Mr. Stephens is responsible for his substitutes deliberate indifference actions towards the Plaintiff. The Plaintiff was given no option to appeal to Mr. Stephens directly. "TDCJ" policy restrained the Plaintiff and that policy is enforced by Mr. Stephens himself. Ms. Stephens lack of oversight to the Plaintiff's safety needs was a failure. The Plaintiff should not be held at fault for not seeking the direct intervention from Mr. Stephens when "TDCJ" policy prohibits her from doing so. The Plaintiff's constitutional right against Cruel and Unusual Punishment prohibited under the Eighth Amendment of the United States Constitution was grossly violated. She was assigned to an unsafe cell, complaints to Rank were ignored, suffered a fall and head injury, asked to be moved to a safe cell to Rank, request denied, denied medical care by a physician for 10 days post head injury and suffered physical and emotional distress throughout. An injury report was filed by officer Sohebi, supervisor on duty and medical notified and photographs taken by safety officer, Mr. Ruiz. Rank-in-file were aware of the Plaintiff unsafe conditions that she was forced to endure. Unscrupulously, violating the Plaintiff's constitutional rights was egregious. The Plaintiff was forced to go through the grievance process all the while remaining in the same unsafe cell for over two weeks experiencing

post head injury symptoms and sleeping on the floor contrary to "TDCJ" policy. Prison officials under the direction of Mr. Stephens cannot violate policy and then claim no wrongdoing. And even after the grievance process (92 days later) the response the Plaintiff received from the Director's office was less than forthright and unresponsive to her safety needs in an appropriate time and manner.

### QUESTION

2.  In your complaint, you have named Warden Meloyde Nelson as a defendant. State exactly what it is that this defendant either personally did or failed to do while acting under color of state law that you believe violated your constitutional rights. Specifically state each and every injury, harm, damage or other adverse consequence which you suffered as a result of the acts or omissions of this defendant. (Doc. 6 pg. 3 of 6)

### ANSWER

Defendant, Ms. Meloyde G. Nelson, is the Warden for the Mountain View Unit. She is legally responsible for the operation of Mountain View Unit and for the welfare of all offenders in that prison. She failed to secure a safe cell, a precursor that caused the Plaintiff to have a head injury. She delegates duties and responsibilities to rank-in-file and officers under her command. The day-to-day operations of the Unit are left to the Warden's supervisors (i.e. Assistant Warden Franks, Major, Capt.'s, Lt.'s, Sgt.'s and officers). They speak and perform on the behest of the Warden. The Plaintiff sought the assistance of the Warden's supervisor's when she was assigned to an unsafe cell on May 20, 2015. The Plaintiff's pleas were not heeded to. All contrary to "TDCJ" policy E.D.-10.61. Instead her pleas were ignored. The Plaintiff filed an "EMERGENCY" grievance on May 20, 2015 requesting to be place on a BOTTOM

BUNK restriction.  But the grievance was processed as non-emergency.  Warden Nelson did not respond to the grievance immediately.  Rather, allowed the Plaintiff to endure 15 days in that same unsafe cell.  It was not until the Plaintiff's symptoms of headaches, feeling off-balance and nausea persisted, that she was seen by Dr. Burleson on June 4, 2015 who ordered the lower bunk restriction.  Both Warden Nelson and Assistant Warden Franks refused to act without and unless medical intervene first.  Warden Nelson's absolute disengagement in regards to the Plaintiff's safety is inexcusable, illegal and unethical.  Serious injuries such as head injuries should not be taken with less seriousness than seizures or food poisoning.  It is an injury nevertheless. But that is how Warden Nelson addressed it.  Warden Nelson and her supervisors gave the Plaintiff's safety hazard and head injury de minimis attention.  The Plaintiff pleaded from the time she was moved from a bottom bunk bed to a top bunk bed nealy all Rank-in-file and officers until the time Dr. Burleson saw the Plaintiff on June 4, 2015.  Their reluctance to act to secure the safety of the Plaintiff was evident when nothing was done.  The Plaintiff appealed to Warden Nelson personally 2 days post head injury on May 28, 2015 while holding a Protective Custody meeting.  The following conversation occurred:

<div style="padding-left: 2em;">

Warden Nelson:   "Saldivar, I just finished talking to your sister and I assured her, and I am assuring you, that I will take care of you and make sure you see medical.  Your family need not to be bothered about you with everything you are going through".

Plaintiff:   "Warden Nelson, I need a bottom bunk bed for I fear falling again and now I have a head injury and I have not seen medical for it".

Warden Nelson:   "Medical will be seeing you".

</div>

This assurance was not honored by Warden Nelson.  Warden Nelson could have ORDERED the Plaintiff be moved to a safe cell during this meeting.  SHE DID NOT.  Warden Nelson could have inquired why the Plaintiff had not seen a physician.  SHE DID NOT.  Warden Nelson could have expedited that the Plaintiff

be  seen by medical if she found out a physician was available.  SHE DID NOT.
In fact, Warden Nelson did nothing to insure the safety of the Plaintiff.
Warden Nelson's deliberate indifference violated the Constitutional rights
of the Plaintiff prohibition against Cruel and Unusual Punishment under the
Eighth Amendment of the United States Constitution to remain the Plaintiff
in an unsafe cell where she had to sleep on the floor because after falling
from the top bunk bed, the Plaintiff feared falling again.  In addition, the
Plaintiff was experiencing symptoms of a headache, feeling off-balanced and
nausea to climb up or down a top bunk bed which would have been dangerous and
experience another fall.  Warden Nelson knowing "TDCJ" policy prohibiting
offenders from sleeping on the floor, she preferred to ignore that policy
altogether, ignore due medical care after Plaintiff's post head injury and
chose to ignore the issues and the problem.  Furthermore, her supervisors
performed with the same deliberate indifference as Warden Nelson.  They did
nothing to ensure the Plaintiff's safety.  The Plaintiff had to endure all of
their harsh stand against "TDCJ" policy no matter their violation  of it.
Warden Nelson cannot make false assurances to those who depend on her that their
safety and well-being will be adequate and appropriate during their prison
sentences.  Her inaction is not commonly of someone who is in a leadership
position.  Her leadership during the Plaintiff's ordeal is less desiring when
she turns a blind eye and deaf ear to safety concerns.  Warden Nelson cannot
make a claim that the Plaintiff did not have a bottom bunk restriction for her
inaction because standard safety policy E.D.-10.61 that was triggered by the
Plaintiff's pleas to be moved to a safe cell trumps waiting for medical to
evaluate the Plaintiff for a restriction.  Prison officials could have taken
corrective measures before and after the Plaintiff's head injury.  THEY DID NOT.
The Plaintiff was the recipient of the lack of responsibility to act as required

by law and "TDCJ" policy by Warden Nelson and her supervisors that lead and contributed to the Plaintiff's suffering a fall and head injury.

## QUESTIONS

3.    In your complaint, you have named Assistant Warden Franks as a defendant. State exactly what it is  this defendant either personally did or failed to do while acting under color of state law that you believe violated your constitutional rights.  Specifically state each and every injury, harm, damage or other adverse consequence which you suffered as a result of the acts or omissions of this defendant.  (Doc. 6 pg. 3 of 6)

## ANSWER

Defendant, Ms. Whitney Franks, is a correctional officer of the Texas Department of Corrections who, at all times mentioned in this complaint, held the Rank of Assistant Warden and was assigned to the Mountain View Unit.  She failed to secure a safe cell, a precursor that caused the Plaintiff to have a head injury.  Assistant Warden Franks performs her duties on the behest of "TDCJ" and Warden Nelson.  She delegates duties to supervisors (i.e. Major, Capt.'s, Lt.'s, Sgt.'s and officers)  to operate a safe environment to all prisoners during the day-to-day operation of the unit prison according to "TDCJ" policy E.D.-10.61.  The Plaintiff pleaded to the prison supervisors to be moved to a safe cell because the Plaintiff could not climb up or down a top bunk bed of her assigned cell.  They refused to listen.  On May 20, 2015, the Plaintiff filed an "EMERGENCY" grievance that was processed non-emergency instead.  On May 26, 2015, the Plaintiff fell off the top bunk bed hitting her right side of her head and sustaining a hematoma.  The prison supervisors remained defiant and would not move the Plaintiff to a safe cell with a bottom bunk bed even after sustaining a head injury.  On May 28, 2015 as Assistant

Warden Franks and Major Williams made rounds in E-Dorm building where Protective
Custody offenders are assigned, the Plaintiff spoke to Assistant Warden Franks
personally.  The following conversation occurred:

Plaintiff:    "Warden Franks, I fell off the bed because I cannot climb up
              or down the TOP BUNK and I already have a head injury.  Can
              I be moved to cell #5 which is available with a BOTTOM BUNK?"
Asst. Warden:  "Unless medical give you a BOTTOM BUNK BED restriction, I am
              not going to do anything to move you at all, regardless if
              you fell and injured your head".
Plaintiff:    "Warden Franks, I have headaches, feel off-balanced and
              have nausea.  Does not my safety concern you?"
Asst. Warden:  "What don't you understand about what I've just told you?  I
              am not moving you, no matter what!"
Plaintiff:    "But Warden Franks, this is an issue of my health and safety"
Asst. Warden:  "I'm not talking to you about this anymore!"

Assistant Warden Franks turned and walked away.  At a meeting later that
afternoon with Warden Nelson, Assistant Warden Franks and the Plaintiff,
Assistant Warden Franks was defiant as she kept shaking her head indicating
"NO" to Warden Nelson to deny Plaintiff's request to be moved to a safe cell.
Assistant Warden Franks deliberate indifference was reprehensible.  She cared
not for the Plaintiff's well-being or safety.  She rather see the Plaintiff
sleep on the floor contrary to "TDCJ" policy instead of securing her safety.
Assistant Warden Franks, who had the discretion to secure the safety of the
PLaintiff, consented to allow the Plaintiff to endure 15 days in that same
unsafe cell.  It was not until the Plaintiff's symptoms post head injury
persisted that she was seen by Dr. Burleson on June 4, 2015 who ordered the
lower bunk bed restriction.  Both Warden Nelson and Assistant Warden Franks
refused to act without the intervention of medical first.  The medical
department, who is under contract with "TDCJ", is not responsible  for the
overall safety of the Plaintiff.  "TDCJ" security does not operate dependent
upon medical.  It should take preeminence over any department to ensure the
safety of all offenders.  The Plaintiff had a right to be secured in a safe

cell.  Assistant Warden Franks hands were not tied in respect to taking action on an issue, especially a safety hazard, unless another department acted first. Offenders are at the mercy of those prison officials entrusted with their safety. Assistant Warden Franks had the authority to exercise good judgment to secure the safety of the Plaintiff.  Instead, chose to punish the Plaintiff for no reason other than to be malicious.  She was in mutual agreement with Warden Nelson to violate Plaintiff's constitutional right against Cruel and Unusual Punishment when both of them refused to keep the Plaintiff safe.  Assistant Warden Franks behavior can only be characterized as wantonness, obduracy and sadistic prohibited by the Eighth Amendment of the United States Constitution.

**QUESTION**

4.   You  have named the UTMB Contractor as a defendant.  Are you attempting to sue UTMB or a specific employee of UTMB?  Be specific.  (Doc. 6 pg. 4 of 6)

**ANSWER**

The Plaintiff is suing UTMB Contractor as an institution as a whole, <u>NOT</u> a specific employee of UTMB.  The Plaintiff cannot specifically name one person solely responsible for the denial of medical care.  "TDCJ" policy indicates UTMB Contracted as an institution, not a individual private practice.

**QUESTION**

5.   Who did you inform that you felt unsafe using the top bunk?  (Doc. 6 pg. 4 of 6)

**ANSWER**

MAY 20, 2015
Lt. Hocutt, Sgt. Briggs, Officer Coble, Officer Davis

MAY 21, 2015
Sgt. McGill, Nurse Williams, Officer Nunn, Lt. Evans, Officer Robinette

MAY 22, 2015
Officer Griffin, Officer Kuzenka, Lt. Evans

MAY 26, 2015
Officer Sohebi, Lt. Thatket, Nurse Roanoke, Sgt. McGill
Officer Backstrawn, Safety Officer Ruiz

MAY 27, 2015
Officer Aguirre, Nurse Reinacher

MAY 28, 2015
Officer Davenport, Nurse Northkett, Assistant Warden Franks,
Major Williams, Warden Nelson, Ms. Williams

MAY 29, 2015
Officer Teaque, Nurse Northkett, Officer Brockington

MAY 30, 2015
Officer Sorenson, Nurse Kaplan, Lt. Evans, Officer Keen
Lt. Maneer, Nurse Roanoke

MAY 31, 2015
Officer Sorenson

JUNE 1, 2015
Officer Sorenson, Nurse McCutchin

JUNE 2, 2015
Nurse Reinacher

JUNE 3, 2015
Officer Moore

JUNE 4, 2015
Officer Teaque, Officer Horne, Officer Scott
Nurse Booth, Dr. Burleson


## QUESTION

6.   Although you were not seen by a physician immediately after your injury,

were you seen by other medical personnel for your injury?  (Doc. 6 pg.

4 of 6)

## ANSWER

Yes, the Plaintiff spoke to Nurse Roanoke, Nurse Reinacher, Nurse Williams,

Nurse Booth, **BUT ONLY** Nurse Roanoke provided nursing treatment.  Nurse

McCutchin, as Nurse Supervisor, only made an assurance that they would expedite the Plaintiff to see a provider.  But this assurance did not come to fruition.

### QUESTION

7.  Describe in detail all of the medical attention and treatment you received for your injury sustained on May 26, 2015.  Provide the dates on which the treatment was given.

### ANSWER

#### MAY 26, 2015

Nurse Roanoke came to E-Dorm Building to assess the Plaintiff at her cell side.  The Plaintiff was not taken to the medical building.  She took the Plaintiff's vital signs at her cell door, placed her hands on the Plaintiff's head to feel for lumps, ordered an ice pack to the Plaintiff's head for 24 hours and tylenol every 8 hours as needed for pain.  Nurse Roanoke stated in her nursing notes that the "mode of arrival" was ambulatory which is not absolutely true because the Plaintiff never left her cell or the building. She noted in her nursing notes that there was no presence of a hematoma immediately after the fall.  But later she noted that there was a hematoma on May 30, 2015.

#### MAY 30, 2015

After the insistance of the Plaintiff and her family calling the unit inquiring why the Plaintiff had not seen a physician, the Plaintiff was taken to the medical building to see Nurse Roanoke.  Nurse Roanoke took the Plaintiff's vital signs sitting and standing and noted that her blood pressure was tilting some 20 points and stressed the concern that the Plaintiff was dehydrated and ordered for the Plaintiff to increase her liquid intake, gave the Plaintiff a pass to keep her matress on the floor to sleep as prison officials were asking

for a pass to allow the Plaintiff to sleep on the floor because "TDCJ" policy did not allow offenders to sleep on the floor. Nurse Roanoke stated that this pass was ineffect pending review by a provider. She examined the Plaintiff's head and found a hematoma on her side of her head.

## JUNE 4, 2015

The Plaintiff finally was seen by Dr. Burleson because she was vomiting at her visit with her niece and sister. This symptom was in conjunction with her throbbing headache, nausea and feeling off-balanced since waking up this morning. Dr. Burleson after evaluating the Plaintiff's left eye and then her right eye, he called Huntsville to obtain authorization for a CT Scan to be done at Coryell Memorial Hospital. At the Hospital, where the emergency room doctor performed a neurological exam, a CT Scan done, intravenous medications of Benadryl and Reglan for symptoms of a headache and nausea given.

## QUESTION

8.    How were you harmed by not seeing a doctor until ten days after you sustained your injury on May 26, 2015?

## ANSWER

The Plaintiff was harmed by not seeing a doctor when medical nurses are limited to what they can treat and prescribe. For instance, the nurses could not order that the Plaintiff be moved or given a bottom bunk bed restriction to be assigned to a safe cell. After the Plaintiff fell from her top bunk bed and hitting her head hard, sustaining a hematoma, experiencing a throbbing headache, feeling off-balanced and nausea making it difficult to smell or eat food, the Plaintiff remained in that same unsafe cell for possible more harm. The Plaintiff feared going to sleep especially on a top bunk bed and again falling and more fear of not waking up again. Medical personnel are trained

that when a person has a head injury, that person is not allowed to go to
sleep until evaluated by a physician for any adverse effects such as coma.
The Plaintiff has a Bachelor's Degree in Nursing and was trained as such.

The Plaintiff was also harmed when nurses are not allowed by law to order
medications beyond their expertise.  "**BEFORE**" the fall and head injury, the
Plaintiff was being evaluated by UTMB medical doctors for elevated liver
enzymes.  Abdominal and liver ultrasounds were ordered to rule out tumors,
hepatitis, cancer, etc.  They were ruled out.  Nevertheless, the liver enzymes
continued to be elevated unto this day.  The Plaintiff was advised by UTMB Dr.
Hayes not to take MOTRIN or ASPIRIN for any kind of pain because of the elevated
liver enzymes and to limit Tylenol intake to a minimum to avoid further
elevation of those liver enzymes and possible damage to the liver.  High dosage
of chronic use can cause liver disease.  "**AFTER**" the Plaintiff suffered her
fall and head injury, she had throbbing headaches.  Nurse Roanoke ordered on
May 26, 2015 (the day the Plaintiff fell) Tylenol 325mg, 2 tabs, tid (every
8 hours).  The Plaintiff told Nurse Roanoke on May 30, 2015 that she have had
to increase her Tylenol intake to every 4 hours because her throbbing headaches
continued without relief.  Because "NO MEDICAL PHYSICIAN WAS AVAILABLE" to see
the Plaintiff for her post head injury symptoms, she was forced to seek relief
with what she had available and at her disposal by prison officials who are able
to provide Tylenol to offenders upon asking.  This was a concern for the
Plaintiff because her liver was already compromised with the elevated liver
enzymes.  The extend, if any, of damage the Plaintiff's liver sustained due to
the intake of Tylenol for pain is yet to be seen and determined.  Had the
Plaintiff seen a physician, maybe a different choice of medication for her
throbbing headaches would have been prescribed.  Dr. Hayes said baby aspirin would
have been a preferred choice in the past if the Plaintiff had pain of any kind.

Nurse Roanoke then referred the Plaintiff to a provider but was not seen until her symptoms progress further than on June 4, 2015, she finally saw Dr. Burleson (10 days post head injury).  This is one of the many reasons why the Plaintiff begged and pleaded with prison officials and medical to intervene and evaluate the Plaintiff sooner than June 4, 2015.

Furthermore, when the Plaintiff fell, she hit her right side of her head, hip and ankle.  The liver is on the right side of one's body.  This concern the Plaintiff as to what, if any, damage or harm was done to her liver.  One will never know since she was "**NOT**" evaluated by a physician at the time of her fall and injury.

Nurse Roanoke acknowledged in her nursing notes that the Plaintiff was "very short and obese, that her legs are not long enough to stretch the distance for the rungs leading to the top bunk".  Prison security officials knew the Plaintiff's height and weight dilemma for why she was "**NEVER**" assigned to a top bunk bed as prison records will show.  They rather hide behind a medical restriction for their inaction, than implementing a "TDCJ" policy that they should have enforced.

The Plaintiff was harmed when her fall and head injury was treated by prison officials and medical inhumanely.  The Plaintiff was also harm psychologically and emotionally when emotions of fear, crying episodes and distress were present post head injury.  The Plaintiff was not under psychiatric or psychological treatment before the fall and head injury.  Presently, the Plaintiff suffers periodic rollercoaster emotions of fear and crying spells.  She copes at this time without mental help by going outside for fresh air, doing gardening and prayer with her priest as a way to deal with her emotions.

Director Stephens direct intervention to the Plaintiff's safety concerns where his correctional surrogates refused to implement "TDCJ" policy, was a

failure and unconventional.

Warden Nelson was not candor to the Plaintiff's livelihood and safe conditions. Her attitude was nonchalant.

Assistant Warden Franks exhibited inconceivable behavior towards the Plaintiff when faced with a problem (i.e. the Plaintiff being in an unsafe cell) where the solution (i.e. move the Plaintiff to a safe cell) did not disturbed the operations of the unit but rather would have secured the safety of the Plaintiff.

That UTMB Contractor did not have providers available at the time of the Plaintiff's fall and head injury is disturbing to say the least. No prison across the State of Texas should be without a physician, an attending physician or a physician on call where "**INJURIES**" should be dealt with appropriately and in a timely manner especially head injuries. That there was not one to evaluate the Plaintiff for her injury was malpractice at its worse by UTMB. The Plaintiff, as a prisoner, is guaranteed medical care by the United States Constitution and the Texas Constitution while in the custody of the State of Texas. This guarantee was denied to the Plaintiff.


### FINAL QUESTION OF THE COURT

9.   I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Title 28 U.S.C. Section 1748. Signed this 24ᵗʰ day of May, 2016. (Doc. 6 pg. 6 of 6)


_____
Signature of Plaintiff

## CERTIFICATE OF SERVICE

I, Yolanda Saldivar, do hereby certify that the foregoing documents have been mailed via regular mail to the United States District Court, Western District of Texas, Waco  Division, 800 Franklin Ave., Room 380, Waco, Texas 76701 on 24th day of _____May_____ , 2016.

_____
Signature of Plaintiff


I, Yolanda Saldivar, do hereby certify that the foregoing documents have been mailed via regular mail to Mr. William Stephens, Texas Department of Criminal Justice Director, P.O.Box 99, Huntsville, Texas 77002 on 24th day of _____May_____ , 2016.

_____
Signature of Plaintiff


I, Yolanda Saldivar, do hereby certify that the foregoing documents have been mailed via truck mail to Ms. Meloyde G. Nelson, Texas Department of Criminal Justice Warden for the Mountain View Unit through the Unit's mailing system on 24th day of _____May_____ , 2016.

_____
Signature of Plaintiff

### CERTIFICATE OF SERVICE (CON'T)

I, Yolanda Saldivar, do hereby certify that the foregoing documents have been mailed via truck mail to Ms. Whitney Franks, Texas Department of Criminal Justice Assistant Warden for the Mountain View Unit through the Unit's mailing system on _24th_ day of ___May___, 2016.

_Yolanda Saldivar_
Signature of Plaintiff

I, Yolanda Saldivar, do hereby certify that the foregoing documents have been mailed via regular mail to UTMB Contractor for the Texas Department of Criminal Justice, P.O.Box 99, Huntsville, Texas 77002 on _24th_ day of _May_, 2016.

_Yolanda Saldivar_
Signature of Plaintiff

Clerk, United States District Court

Western District of Texas

United States Courthouse

800 Franklin Avenue, Room 380

Waco, Texas 76701

**RECEIVED**

MAY 2 6 2016

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
        DEPUTY CLERK

Re:  Yolanda Saldivar #733126
     v.
     William Stephens, Meloyde Nelson,
     Whitney  Franks, and UTMB Contractor
     W-16-CA-095-RP

Dear Clerk of the Court:

Enclosed please find Plaintiff's "MORE DEFINITE STATEMENT" pursuant to
this Court's Order of April 28, 2016.  Please file and present it to the
Court.

Thank you for your assistance in this matter.

Respectfully Submitted,

Yolanda Saldivar, #733126

Mountain View Unit

2305 Ransom Rd.

Gatesville, Texas 76528

MAY 24 2016

Yolanda Saldivar 733126
Mountain View Unit
2305 Ransom Rd.
Gatesville, Texas 76528

Clerk, United States District L
Western District of Te
Waco Division
800 Franklin Ave
Room 380
Waco, Texas 76701